JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 3844 vs. SEX OFFENDER REGISTRY BOARD.

Bristol. September 7, 2006. - December 5, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender.

This court concluded that G. L. c. 6, § 178K, and 803 Code Mass. Regs. §§ 1.38-1.40 (2002), establishing the procedure for determining the classification of a person as a level one, two, or three sex offender did not vest in the Sex Offender Registry Board untrammeled discretion over the classification level so as to render the procedure arbitrary and contrary to law. [774-777]

CIVIL ACTION commenced in the Superior Court Department on February 5, 2004.

Motions for judgment on the pleadings and for reconsideration were heard by *Robert J. Kane,* J., and a question of law was reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel A. Less,* Special Assistant Attorney General, for the defendant.

*William S. Smith* for the plaintiff.

*Carol A. Donovan,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. We transferred this case on our own motion to decide a question reported by a Superior Court judge: whether G. L. c. 6, § 178K, and the regulations promulgated thereunder, 803 Code Mass. Regs. §§ 1.38-1.40 (2002), for determining the classification of a person as a level one, two, or three sex offender "vests untrammeled discretion in the [Sex Offender Registry] Board [(board)] over the classification level, thereby

rendering the procedure one that is arbitrary and contrary to law." Because we conclude that the statute and regulations do not violate the plaintiff's constitutional due process rights, we vacate the order reversing the decision of the board and remand the case to the Superior Court for further proceedings consistent with this opinion.[1]

*The statutory scheme.* General Laws c. 6, §§ 178C-178O, as appearing in St. 1999, c. 74, § 2,[2] was adopted to protect the public from "the danger of recidivism posed by sex offenders, especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior . . . [and] to assist local law enforcement agencies' efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about certain sex offenders to the public." St. 1999, c. 74, § 1. Under G. L. c. 6, § 178E, all convicted sex offenders[3] must register with the board. The board consists of seven members appointed by the Governor, at least one of whom must be a licensed psychologist or psychiatrist with special expertise in the assessment and evaluation of sex offenders, including juvenile sex offenders, and who has knowledge of the forensic mental health system; and at least one individual who has expertise or experience with victims of sexual abuse. G. L. c. 6, § 178K (1). Under G. L. c. 6, § 178E (*a*), the board is authorized to transmit the registration information to the Federal Bureau of Investigation (FBI) and to the police departments where the sex offender intends to live and work and where the offense was committed. G. L. c. 6, § 178E (*a*).

General Laws c. 6, § 178K (1), specifically authorizes the board to develop and promulgate guidelines to assess the risk of reoffense and the degree of dangerousness sex offenders pose to

---

[1]We acknowledge the amicus brief of the Committee for Public Counsel Services.

[2]General Laws c. 6, §§ 178C-178K, has been amended frequently since 1999. See, e.g., St. 2006, c. 139, §§ 5-31, 132. These amendments are not relevant to this case.

[3]A sex offender is "a person . . . who has been convicted of a sex offense . . . on or after August 1, 1981." G. L. c. 6, § 178C.

the public.[4] The Legislature listed noninclusive factors that are relevant in determining the risk of reoffense.[5] Additionally, G. L. c. 6, § 178K (2), directs the board to "provide for three levels of notification depending on the degree of risk of reoffense and the degree of dangerousness posed to the public by the sex offender."

Level one offenders are considered low risk, and the board must transmit registration data only to the FBI and to the local police departments where the offender lives and works (or, if the offender is in custody, where he or she intends to live and work) and where the offense was committed. G. L. c. 6, § 178K (2) (*a*).

___

[4] The statute states that the board "shall promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public or for relief from the obligation to register and shall provide for three levels of notification depending on such risk of reoffense and the degree of dangerousness posed to the public; apply the guidelines to assess the risk level of particular offenders; develop guidelines for use by city and town police departments in disseminating sex offender registry information; devise a plan, in cooperation with state and local law enforcement authorities and other appropriate agencies, to locate and verify the current addresses of sex offenders including, subject to appropriation, entering into contracts or interagency agreements for such purposes; and conduct hearings as provided in section 178L." G. L. c. 6, § 178K (1).

[5] The relevant factors specified in G. L. c. 6, § 178K (1) (*b*)-(*l*), include criminal history factors that are considered in determining the risk and degree of dangerousness, such as the relationship between the sex offender and the victim, whether the offense involved the use of a weapon, violence or infliction of bodily injury, and the number, date, and nature of prior offenses; conditions of release that minimize the risk of reoffense and the degree of dangerousness to the public; physical conditions that minimize the risk of reoffense; whether the offender was a juvenile when the offense was committed, his or her response to treatment, and his or her subsequent criminal history; psychological or psychiatric profiles indicating a risk of recidivism; history of alcohol or substance abuse; participation in sex offender treatment and counselling while incarcerated or while on probation or parole and response to such treatment; recent behavior, threats, or expressions of intent to commit additional offenses; review of any victim impact statement; and review of any materials submitted by the offender, his attorney, or others on behalf of the offender. Factors indicating a high risk of reoffense include mental abnormality; whether the offender's conduct is characterized by repetitive and compulsive behavior; whether the offender was an adult who committed the offense on a child; the age of the offender at the time of the first sex offense; whether the sex offender has been adjudicated to be a sexually dangerous person pursuant to G. L. c. 123A, § 14, or released from civil commitment pursuant to G. L. c. 123A, § 9; and whether the offender served the maximum term of incarceration. G. L. c. 6, § 178K (1) (*a*).

Level two offenders are considered a moderate risk to reoffend and are subject to the same requirements as level one offenders. G. L. c. 6, § 178K (2) (*b*). Additionally, the public can obtain the information regarding level two offenders in accordance with G. L. c. 6, §§ 178I and 178J,[6] and such offenders are obligated to comply with the registration requirements of G. L. c. 6, § 178F ½.[7] *Id.* Level three offenders are considered high risk and, in addition to the notification process required for levels one and two, the police departments are required to notify organizations in the community and individual members of the public that are likely to encounter such offenders, and neighboring police districts may inform the residents of their municipality of such offenders they are likely to encounter who reside in an adjacent city or town. G. L. c. 6, § 178K (2) (*c*).

The board developed and promulgated guidelines pursuant to G. L. c. 6, § 178K. Registration and classification is a two-part process. First, the board makes a recommendation on the offender's duty to register and the appropriate classification level. In the initial classification process, the board uses various factors, incorporated from G. L. c. 6, § 178K (1) (*a*)-(*l*), see note 5, *supra*, to determine the appropriate classification level of an offender.[8] 803 Code Mass. Regs. § 1.40. The board uses a classification worksheet, an assessment form comprised of calculations determined from documents obtained from other agencies

---

[6]Any person who is eighteen years or older requesting sex offender registry information for the protection of a child under 18, for another person in the care or custody of the requesting individual, or for his or her own protection "shall" receive a report indicating, inter alia, whether a particular individual is a sex offender classified as either level two or three and the offenses of which the offender was convicted. G. L. c. 6, §§ 178I, 178J.

[7]A level two or three offender must appear in person annually (or, if determined to be a sexually violent predator under G. L. c. 6, § 178K [2] [*c*], every ninety days) at the local police department in the city or town where the offender lives or works to verify the accuracy of the registration information on file. The offender's photograph and fingerprints will also be updated at this time. If an offender lists a homeless shelter as his residence, the offender is required to appear every ninety days to verify the accuracy of the information on file. G. L. c. 6, § 178F ½.

[8]In addition to the factors specified in G. L. c. 6, § 178K (1) (*a*)-(*l*), the board considers whether the sex offender is progressing less than satisfactorily or successfully completed sex offender specific treatment. 803 Code Mass. Regs. § 1.40(24).

and materials submitted by or on behalf of the offender. 803 Code Mass. Regs. § 1.03 (2002). The board also considers the victim impact statement. 803 Code Mass. Regs. § 1.39(3).

Once a decision has been reached, the board notifies the offender of the recommendation. The offender then has the option either to accept or to reject the recommendation. If the offender rejects the recommendation, the second stage of the process is triggered. During this second stage, the offender is provided an individualized evidentiary hearing before a hearing examiner.[9] At the hearing, the offender has the opportunity to present relevant evidence bearing on the obligation to register and the recommended classification level. However, the board has the burden to prove by a preponderance of the evidence that the offender has the duty to register and the appropriate level. 803 Code Mass. Regs. § 1.10 (2002). The hearing examiner is not bound by either the recommendation of the board or the classification worksheet completed during the initial review. Instead, the hearing examiner conducts a de novo hearing and makes a final determination regarding the offender's duty to register and the appropriate classification level. The examiner is required to issue a written decision containing a statement of the issues involved in the hearing; a summary of evidence, including credibility determinations; specific findings of fact, if appropriate, on all relevant disputed factual matters; rulings of law on all relevant disputed legal issues; conclusions drawn from the findings of fact and rulings of law, if appropriate; and the final registration determination and classification level. 803 Code Mass. Regs. § 1.22(1) (2002).

Pursuant to G. L. c. 6, § 178M, an offender "may seek judicial review, in accordance with [G. L. c. 30A, § 14], of the board's final classification and registration requirements. The court shall, if requested, appoint counsel to represent the sex offender in the proceedings if such offender is deemed indigent in accordance with [G. L. c. 211D, § 2]."

---

[9]Pursuant to 803 Code Mass. Regs. § 1.21 (2002), an impartial hearing is required. If the offender is indigent, counsel may be appointed to represent him at the hearing. 803 Code Mass. Regs. § 1.08 (2004). The parties are also entitled to prehearing discovery, and they are permitted to file motions before or during the hearing. 803 Code Mass. Regs. §§ 1.11, 1.18 (2002).

*Procedural and factual background.* On October 21, 1992, the plaintiff was convicted of indecent assault and battery on a person over fourteen years in violation of G. L. c. 265, § 13H, a "sex offense" as defined in G. L. c. 6, § 178C, and of assault and battery. The victim, a twenty year old woman, reported to the police, on February 28, 1991, that the plaintiff had sexually abused and assaulted her while she was at a friend's residence. The plaintiff received a suspended sentence of one year in a house of correction with probation for one year. The plaintiff subsequently filed a notice of appeal but withdrew the appeal on December 9, 1992.

In April, 2003, the board notified the plaintiff of his obligation to register as a level two sex offender, pursuant to G. L. c. 6, § 178K (2). The initial decision was based on factors outlined in 803 Code Mass. Regs. § 1.40, including the plaintiff's conviction and sentence of indecent assault and battery, his probation performance, his criminal history, his substance abuse history, the lack of sex offender treatment, and allegations of sexually assaulting his three year old daughter. In response, the plaintiff requested a hearing to contest the recommended classification. A de novo hearing was conducted by a hearing examiner on October 14, 2003.[10]

The hearing examiner's decision considered the plaintiff's convictions of indecent assault and battery in 1991, operating a motor vehicle while under the influence of alcohol in 1992, and assault and battery and malicious destruction of property in 1995. The examiner also considered the plaintiff's juvenile record, including four arrests for crimes against property, and his adult criminal record consisting of three charges for crimes against property. The examiner weighed the plaintiff's admission of substance abuse and noncompliance with probation requirements to attend substance abuse counselling. The examiner also considered the plaintiff's refusal to accept responsibility for the

---

[10]At the hearing, the plaintiff submitted a motion in limine seeking to exclude documents relating to the plaintiff's alleged sexual abuse of his daughter. Although the plaintiff's motion was denied, the examiner did not consider the information in affirming the initial level two classification.

indecent assault and battery conviction.[11] Last, the examiner considered the plaintiff's hope to attend college and its potential for exposure to numerous "extrafamilial females." Because the plaintiff conceded that alcohol was a factor in his indecent assault and battery conviction and there was no evidence to confirm the plaintiff's drug and alcohol abstinence, the hearing examiner emphasized his concern that the plaintiff could relapse into alcohol or drug use at any time and remained concerned about "the large pool of college females that would present as prospective victims upon contingency of reoffense." However, the examiner considered the plaintiff's matriculation in college as a mitigating factor, along with the plaintiff's self-reported ten years' sobriety, his sex offense free status in the community eleven years since the indecent assault and battery conviction, and evidence of family support. Consequently, the examiner classified the plaintiff as a level two offender.

The plaintiff filed a complaint for judicial review on February 5, 2004, arguing that the process the board used to determine his classification lacked objective standards and thus violated his constitutional right to due process. A Superior Court judge remanded the case to the board, requesting that it reconsider the plaintiff's classification level using quantitative, objective standards. The board filed a motion to reconsider, arguing that the regulations did not violate constitutional due process and were developed based on a proper delegation of legislative authority pursuant to G. L. c. 6, § 178K. In response, the judge issued an amended order reversing the board's decision, and he simultaneously submitted the reported question for appellate review.

*Procedural due process.* The reported question before us is "whether the [b]oard's final classification procedure vests untrammeled discretion in the [b]oard over the classification level, thereby rendering the procedure one that is arbitrary and contrary to law." The plaintiff claims that a combination of an

---

[11]The plaintiff's terms of supervision for the indecent assault and battery offense included counselling "as required." Substance abuse treatment was required, and the New Bedford Center for Human Services, Inc., issued a "non-compliance report" indicating that the plaintiff had exceeded the number of excusable absences.

447 Mass. 768 (2006)                                             775

Doe, Sex Offender Registry Board No. 3844 *v.* Sex Offender Registry Board.

actuarial predictive approach and an objective, clinical assessment, components that are lacking in the current regulations, is necessary in the final classification process to decrease arbitrariness in classification determinations and erroneous deprivations of liberty. The plaintiff further argues that the board follows a subjective model, granting the board the power to use unfettered discretion when determining the classification of a sex offender. We disagree.

A court must not substitute its judgment for that of the agency because "a properly promulgated regulation has the force of law." *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). Deference is given to the agency unless the regulatory provisions are not in harmony with the legislative mandate. *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). Deference is also necessary to ensure the proper separation of powers between the judiciary and the Legislature. *American Family Life Assur. Co.* v. *Commissioner of Ins., supra* at 480.

However, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution require that individuals be accorded procedural due process when a governmental decision is made pertaining to deprivation of liberty or property interests. *Mathews* v. *Eldridge*, 424 U.S. 319, 332 (1976). Three factors must be weighed in determining procedural due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including . . . the fiscal and administrative burdens [involved]." *Id.* at 335. In the context of sex offender registration, an offender's liberty and privacy interests are constitutionally protected, and deprivation of these interests generally requires procedural due process.

Considering the first and second factors of the test, the plaintiff's interest in this case is weighty, and the risks associ-

ated with an erroneous classification would result in the dissemination of his registration information to the public. However, the plaintiff's interests must, with appropriate safeguards, be weighed against the board's interest in protecting the public. Here, appropriate and adequate safeguards are included in the classification regulations that allow the offender to have a hearing before an impartial hearing examiner for an individualized determination, appointment of counsel if the offender is indigent, entitlement to prehearing discovery, the ability to file motions prior to or during the hearing, and the opportunity to review the detailed, written final classification decision based on a preponderance of the evidence. We have held that "a preponderance of evidence standard, combined with a requirement that the fact finder make detailed findings to demonstrate that close attention has been given to the evidence and that the appropriateness of the classification has been shown, satisfies due process under the State and Federal Constitutions." *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 103-104 (1998). The plaintiff is also accorded several opportunities to challenge the classification decision and to receive ample notice of the initial classification and the subsequent hearing to contest the initial classification. We have stated that procedural safeguards entitling most offenders to a hearing and a determination as to whether registration is required satisfy procedural due process. *Doe* v. *Attorney Gen.*, 426 Mass. 136, 146 (1997).

Concerning the second and third factors, the plaintiff argues that the board should utilize a methodology such as that adopted in New Jersey[12] and indicates that courts in that jurisdiction have held that statistically based presumptions pertaining to classification levels provide a guide "to follow in conjunction

---

[12]New Jersey's sex offender classification system utilizes an empirically guided risk assessment scale, known as the Registrant Risk Assessment Scale (scale), to determine the appropriate classification level of a sex offender. By using this scale along with a detailed manual specifying what constitutes low, moderate, and high risk, prosecutors determine an offender's classification based on a numerical calculation. This calculation is based on applicable factors that are assigned a particular numerical value and then added together to determine an offender's risk level. *Matter of Registrant G.B.*, 147 N.J. 62, 78-79 (1996).

with other relevant and reliable evidence in reaching an ultimate determination of the risk of reoffense posed by the registrant and the appropriate notification due the community." *Matter of Registrant G.B.*, 147 N.J. 62, 81 (1996). Although there may be other possible methodologies used to determine the risk of reoffense by offenders and the use of such alternatives may not pose additional fiscal or administrative burdens, the Legislature mandated the board to designate and implement a specific, detailed methodology to be used in deciding offender classifications in this jurisdiction pursuant to G. L. c. 6, §§ 178C-178O. The use of the classification worksheet and the assignment of a numerical value based on individualized determinations reflect an objective classification process in the initial classification stage. As discussed in *Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd.*, *ante* 750, 762 n.9 (2006), the plaintiff's due process rights are further protected as the board also considers "any information useful," including information introduced by the plaintiff. Additionally, the regulations afford adequate appellate procedures, enabling offenders opportunities to be heard and to contest the recommended classifications.

The plaintiff concedes that the regulations promulgated by the board are a proper delegation of power by the Legislature and have the force of law. The regulations ensure adequate procedural safeguards and do not violate constitutional due process. Thus, because both the initial and final classification conformed to the regulations and guidelines properly promulgated by the board pursuant to G. L. c. 6, § 178K, presumptive or quantitative analysis in the decision-making process to identify the appropriate classification was not required.[13]

*Conclusion.* In sum, the plaintiff received notice of his initial level two classification along with the factors that were taken into consideration and was afforded several opportunities to be heard regarding his classification, including a de novo hearing at which he had the opportunity to present relevant evidence and testimony pertaining to his classification and obligation to

---

[13]The plaintiff also claims that the examiner's final decision was not based on substantial evidence because the examiner failed to use quantitative analysis. We need not address this claim. See *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 882 n.11 (1984).

register. In addition, the hearing examiner, based on the totality of all the relevant evidence introduced during the hearing and the applicable regulatory factors, issued a detailed written explanation supporting the final classification decision. Accordingly, the answer to the reported question regarding due process is, "No." The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*