Kern, Leila R., J.
The plaintiff brings this action pursuant to G.L.c. 30A, §14 and G.L.c. 6, §178M seeking review of the decision by the Sex Offender Registry Board (SORB or Board) requiring him to register as a Level Three sex offender. After careful review of the proceedings and the record, the decision of the Board is affirmed. The Plaintiffs Motion for Judgment on the Pleadings is DENIED and the Defendant’s Motion for Judgment on the Pleadings is ALLOWED.
BACKGROUND
I. SORB Statutes and Regulations
The Board is an administrative agency constituted under the laws of the Commonwealth of Massachusetts. It maintains a central computer registry of all sex offenders, determines whether an offender is required to register as a sex offender, and classifies those offenders required to register. See G.L.c. 6, §178K. A “sex offender” is defined as “a person who resides or works in the commonwealth and who has been convicted of a sex offense .. .” G.L.c. 6, §178C. The Board, pursuant to G.L.c. 6, §178K, is empowered to institute guidelines and regulations for determining the level of risk and dangerousness an offender poses.
Registration and classification of a sex offender is a two-part process. First, the Board makes a recommendation on the offender’s duty to register and the appropriate level of classification. The Board’s regulations identify four specific criteria it must consider when undertaking its initial determination of whether a sex offender has a duty to register. See 803 Code Mass. Regs. §1.06(2). The criteria are: (1) whether the offender’s criminal history indicates at least one conviction or adjudication for a sex offense as defined by G.L.c. 6, §178C; (2) the offense is sexual in nature; (3) the offender lives or works in the Commonwealth; and (4) he currently poses a danger. Id. In determining whether a sex offender currently poses a danger, the Board looks at such factors as the offender’s criminal history, the circumstances of the sex offense, the presence or absence of physical harm caused by the offender, whether the offense involved consensual conduct between adults, and other factors which tend to demonstrate whether the offender is likely to re-offend. See 803 Code Mass. Regs. §1.06(3).
If an offender is required to register, the Board must recommend a classification level, pursuant to the guidelines contained in 803 Code Mass. Regs. §§1.38-1.41. See 803 Code Mass. Regs. §1.06(4). The public does not have access to a Level 1 offender’s information. Certain qualified members of the public can obtain a Level 2 offender’s information. A Level Three offender’s information is actively disseminated by local police agencies. See G.L.c. 6, §178K(2)(a)-(c); Doe, Sexual Offender Registry Bd. No. 3844 v. Sexual Offender Registry Bd., 447 Mass. 768, 770 (2006).
Once an offender receives notice from the Board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. See G.L.c. 6, §178L(l)(c). The hearing is a de novo review and is limited to determining by a preponderance of the evidence whether the offender has a duty to register and, if so, what the appropriate classification should be. See 803 Code Mass Regs. §1.01(1); Doe No. 3844, 447 Mass. at 772. The Hearing Examiner is required to consider the statutory factors enumerated in G.L.c. 6, §178K(l)(a)-(l) in a manner consistent with the Guidelines Recommended Classification located at 803 Code Mass. Regs. §§1.38-1.41. See 803 Code Mass. Regs. § 1.22(2). The Hearing Examiner’s decision is the final Board decision and the final agency action for purposes of judicial review. See 803 Code Mass. Regs. § 1.23. An offender can seek judicial review of the Board’s final classification pursuant to G.L.c. 6, §178M and G.L.c. 30A, §14; Doe No. 3844, 447 Mass. at 772.
II. Procedural History
The plaintiff was convicted in August 1986, in Maine Superior Court, of one count of gross sexual misconduct. In 1987 the plaintiff pled guilty in Massachusetts to assault of a child with intent to commit rape. Because these violations are classified under the Sex Offender Registry Law, G.L.c. 6, §§178C-178Q, as sex offenses, and because the plaintiff lived in the Commonwealth, the Board reviewed his sex offender status to determine whether he was required to register as a sex offender. On or about August 18, 2005, the Board notified the plaintiff, pursuant to G.L.c. 6, §178L, that he must register as a high risk sex offender.
The plaintiff filed a timely challenge to the Board’s initial classification and requested an evidentiary de novo hearing. The hearing was held on December 18, *26 2006, before a board hearing examiner. On March 6, 2007, the Examiner issued her Decision on Petitioner’s Appeal of Recommended Classification, requiring the plaintiff to register with the police and designating him as a high risk offender.
On March 13, 2007, the plaintiff filed this complaint, along with a Motion for a Stay of Registration and Dissemination. On the same day, a justice of the Superior Court held an emergency ex-parte hearing for a temporary restraining order to stay the dissemination and registration, and issued a temporary restraining order to stay the dissemination and registration until March 22, 2007. On March 28, 2007, a hearing to extend the temporary restraining order was held and the order was denied. Thereafter, the plaintiff was ordered to register immediately with the Westborough Police Department.
III. Factual History
The following factual summary is taken from the administrative record, the transcript of the de novo hearing, the Hearing Examiner’s decision, and the pleadings.
A.The Plaintiffs Convictions
The plaintiff was first convicted in Maine Superior Court, after a jury trial, for one count of gross sexual misconduct on August 6, 1986.[1] The victim of the crime was the plaintiffs five-year-old niece, “Victim 1 .”[2] The plaintiff reports that he was intoxicated at the time he committed the offense. As a result of the conviction, the plaintiff was sentenced to a six-year jail term.
In July 1984, the plaintiff sexually abused his eight-year old niece, “Victim 2,” on two separate occasions, both while Victim 2 visited her grandmother, which is where the plaintiff also lived.[3] Again, the plaintiff reports that he was under the influence of alcohol when he sexually assaulted Victim 2. During the first instance of assault, the plaintiff called Victim 2 to his room, removed her pants and underwear, touched her breasts and vagina with his hands, and got on top of her, holding her buttocks against him. Afterwards, he told Victim 2 not to tell anyone about the incident.
The next week, the plaintiff again called Victim 2 to his room. When she refused to come, he went downstairs and pulled her to his room. He then removed her clothing as well as his own, licked her vagina, and touched it with his fingers. He tried to penetrate her vagina with his penis, and when she protested, he stated that he would try again when she was bigger. He then asked her to touch his penis, and when she refused, he forced her hand to his penis and ordered her to “squeeze it.” The plaintiff then ejaculated onto Victim 2’s legs and vagina. After the incident, the plaintiff followed Victim 2 around the house to make sure that she would not reveal the incident to her grandmother.
On March 25, 1987, the plaintiff pled guilty to one count of assault of a child with the intent to commit rape and two counts of indecent assault and batteiy on a child under the age of 14. He was sentenced to a 9-to 12-year state prison term for the charge of assault of a child with the intent to commit rape, and a 9-to 10-year state prison term for the first count of indecent assault and batteiy charge and a 4-to 5-year suspended sentence for the second count.
B.The Plaintiffs Incarceration and Behavior Since Release
The plaintiff was committed to the Maine State Prison in April 1986, and was transferred to MCI-Concord on Januaiy 10, 1990. While incarcerated, the plaintiff accrued a number of disciplinary reports for fighting, unauthorized possession of another inmates’ property, damage of state property, graffiti, obscene language, disruptive conduct, being out of place, assault on staff, possession of contraband, non-compliance with rules and lying. He was placed in the segregation unit on one occasion for disruptive conduct. The plaintiff did not attend sex offender treatment while incarcerated as he indicated that he was not interested in it.
The plaintiff was denied parole six times, and while incarcerated, his assessed need areas were identified as sex offender treatment, substance abuse treatment, educational programming, and being compliant with his mental health by taking his prescribed medication. Upon the expiration of his sentence, he was released from the Department of Corrections on September 20, 1998. On September 30, 1998, he was sent to Bridgewater State Hospital pursuant to G.L.c. 123, § 18(a). He was released into the community on April 14,1999.
From 1999 until 2002 the plaintiff resided at the Medfield State Hospital in a quarter-way house, and, when Medfield State Hospital closed in 2002, he transferred to Westborough State Hospital where he continues to reside. Since entering the community, he enrolled in sex offender treatment with Teiry Burda, Ph.D. Dr. Burda indicated to the Board that the plaintiff entered treatment on May 10, 2004, and continues to attend his appointments consistently. He has been sober for 20 years, and attends a recovery group and AA meetings in the community on a weekly basis. He also works part-time in the hospital kitchen.
The Plaintiff visits his parents and sister every other weekend and there have been no reported problems during the visits. He goes out with the hospital staff in the community on patient outings and his conduct is reported as excellent. It is also reported that the plaintiff takes his medications consistently and has been responsive to his treatment.
C.The Hearing Examiner’s Decision and Findings
The Hearing Examiner categorized the plaintiff as a Level Three sex offender. The decision took into ac *27 count, and applied, several of the Board’s factors to the facts of this case, including: the nature of the plaintiffs offenses; his behavior during incarceration; his therapy during incarceration; probation and/or parole performance; post-incarceration sex offender therapy; his criminal history; his history of substance abuse; mental health issues; evaluation of Dr. Joseph Plaud, Ph.D; and materials submitted to the petitioner and his personal circumstances. Based on her hearing of the evidence, the Examiner found that the plaintiff remains a high risk to re-offend.
Critical to the Examiner’s opinion was the young age of the victims. Despite the plaintiffs mental illness, the Examiner found that the fact that the plaintiff followed Victim 2 around after his offense so that Victim 2 would not be able to tell her grandmother about the incident showed that he knew that his actions were wrong. Also factoring into the decision were his prior alcohol abuse, history of non-compliance with medication, his refusal to attend sex offender treatment while incarcerated, and reports indicating that his risk of sexual violence towards others was “extreme” and that he showed no capacity for empathy towards his victims. While the Examiner did take into account mitigating factors such as Dr. Plaud’s opinion that the plaintiff posed no danger, the fact that his victims were intrafamilial, his residence at a state hospital where he works, attends sex offender treatment, takes medications regularly, and has maintained sobriety, she found when the mitigating factors were contrasted with the aggravating factors, the plaintiff presented a strong candidate for re-offense.
DISCUSSION
I. Standard of Review
In reviewing the agency’s decision, this court must give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7); Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006). The decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law. G.L.c. 30A, §14(7)(e), (g); Doe No. 10216, 447 Mass. at 787. Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6); Doe No. 10216, 447 Mass. at 787. The reviewing judge cannot substitute his determination for the one made by the administrative fact finder between two fairly conflicting views. South Worcester County Reg. Voc. Sch Dist. v. Labor Relations Bd., 386 Mass. 414, 420 (1982). Unlike the Hearing Examiner, a reviewing authority has no opportunity to assess the critical factor of credibility. Morris v. Mass. Bd. of Registration in Med., 405 Mass. 103, 109-14 (1989).
II. Plaintiff s Arguments
A. Lack of Expert Testimony or Evidence
The plaintiff claims the Board failed to meet its burden of proof because it offered no expert evidence to support its decision that the plaintiff should be classified as a Level Three sex offender.[4] Expert evidence, however, is not mandatory to find that a sex offender has a high risk of reoffending and is dangerous enough to warrant a Level Three classification.
First, the statutory language mentions no such requirement. The relevant regulation provides that “in a particular case where the Board intends to rely on the testimony or report of an Expert Witness prepared specifically for the purposes of the registration status and classification hearing, said notification shall inform the sex offender or his Authorized Representative of this intention.” 803 Code Mass. Regs. §1.09(2). Where the offender is indigent, the Board may grant fees to the offender for his own expert. See G.L.c. 6, §178L(c); Doe No. 10216, 447 Mass. at 785. The statute refers only to a particular case and, therefore, not all cases. If the Board were required to present specific expert evidence in ail cases, there would be no need for these provisions.
In addition, G.L.c. 6, §178L(2), requires the Board to support a classification by a “preponderance of the evidence” without further elaboration. The statute, much like the relevant regulation, characterizes the role of expert testimony as discretionary rather than imperative. “(T]he board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding.” G.L.c. 6, §178L(l)(c).
Second, the classification process does not require a finding of a “personality disorder” or “mental abnormality,” technical, medical, or biological diagnoses which would necessitate expert testimony. The absence of a need for these determinations suggests that expert evidence is not required in every case.
Third, the relevant statutes require that the Board’s seven members include licensed psychologists and psychiatrists with “special expertise in the assessment and evaluation of sex offenders,” criminal justice professionals, and an expert in the study of victims of sexual abuse. G.L.c. 6, §178K(1). Collectively, this mix of individuals, embodying a substantial measure of expertise in the standards and guidelines controlling the classification process, serves as an alternative means of competent determination of classification. See Doe No. 10216, 447 Mass. at 786.
In addition, practical considerations reasonably support a legislative exemption of expert testimony. Mandatory expert testimony in every SORB classification proceeding would impose overwhelming burdens of cost, administration, and delay. More fundamen *28 tally, the risk of reoffending is not always a question for expert guidance. Fact finders routinely assess that probability in bail, sentencing, and parole proceedings without the use of experts.
Finally, a decision by the Board that is supported by substantial evidence need not rely on expert evidence. See id., at 785-86 (Board not required to present expert evidence in support of its position before the hearing examiner). As the statute does not mandate expert evidence, this argument does not aid the plaintiff.
B. The Hearing Examiner Drew Conclusions Against the Substantial Weight of the Evidence
The record indicates that the Examiner’s decision was based on substantial evidence. The decision touches factors designated as “high risk” by G.L.c. 6, §178K(l)(a)(i)-(iii): the plaintiff was diagnosed with pedophilia; he committed repetitive and compulsive acts; and his victims were young children. Furthermore, the crimes themselves were violent, another factor which the Examiner properly took into consideration in her analysis. See G.L.c. 6, §178K(l)(b)(ii).[5] See Doe No. 10216, 447 Mass. at 788 (presence of “high-risk” factors lend support to examiner’s decision to classify the plaintiff as a level three offender).
Moreover, factors independent of the actual offenses support the Examiner’s decision. Although the plaintiff is now in sex offender therapy, he refused to attend therapy sessions while incarcerated. G.L.c. 6, §178K(h). See also Smith, v. Sex Offender Registry Bd., 65 Mass.App.Ct. 803, 811-12 (2006) (discussing factors such as whether offender participated in, and was responsive to, sex offender treatment while under supervision as support for finding that offender posed risk to community). He also accrued a number of disciplinary reports while incarcerated, which the Examiner cited as indicating that he has a penchant for lawlessness and anti-social behavior. G.L.c. 6, §178K(i). The plaintiff also possesses a criminal record, which, although dated, supports the Examiner’s finding that the plaintiff shows a propensity to lawlessness and anti-social behavior.
The plaintiff argues that the Examiner erred in ignoring factors that tip in his favor. Contrary to the plaintiffs arguments, however, a fair reading of the Examiner’s decision shows that the Examiner did, in fact, take into consideration mitigating factors. For example, the Examiner discussed the statements in support of the Plaintiff made by the two victims in this case. Id. §178K(k). The Examiner also states, “(t]o his credit, his [v]ictims were intrafamilial, he is residing is [sic] a state hospital where he works, attends sex offender treatment, takes his medications regularly, and has maintained sobriety with treatment.” She also took into consideration the testimony and opinion of Dr. Plaud, who testified that the plaintiff does not pose a danger and should not be required to register.[6] The Examiner places these factors in context by describing how the various aggravating factors offset the redeeming values of the mitigating factors. See Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 764 (2006) (substantial evidence supported examiner’s classification of plaintiff as a level three sex offender where two “high risk” factors ameliorated expert’s opinion that he posed no danger).
When viewed in this light, this court finds that the Examiner’s decision is supported by substantial evidence and will not be disturbed. “As an administrative agency, the board has considerable leeway in interpreting the statute and its regulations, which . . . stand on the same footing as statutes, with reasonable presumptions to be made in favor of their validity.” Smith, 65 Mass.App.Ct. at 813, citing Student No. 9 v. Bd. of Educ., 440 Mass. 752, 762-63 (2004). The Examiner made a complete review of all the evidence presented to her, both aggravating and mitigating, and made a decision precisely within the scope of her duties. Although this court might have concluded otherwise, this court is not entrusted with power to overturn (absent a showing the Examiner’s was arbitrary and capricious) the decision of the Examiner whose sole function and expertise is to determine and classify the risks posed by a convicted sex offender. See id. (“[a]s ‘long as the [board’s] interpretation of its regulations and statutory mandate is rational, and adhered to consistently, it should be respected’ and given substantial deference”). See also Doe No. 10216, 447 Mass. at 788; Doe No. 1211, 447 Mass. at 764. Consequently, the plaintiffs argument on this ground fails.
C. Classification as a Level Three Sex Offender Violates State and Federal Constitutional Rights
The plaintiff also argues that the failure of the Board to prove that he poses arisk of reoffending and, therefore, requiring him to register as a Level Three sex offender is punitive and violates his federal and state constitutional, statutory and common-law rights not to be twice placed in jeopardy for the same offense, not to be subject to ex post facto laws, not to be subjected to cruel or unusual punishment, and his right to privacy.
Case law flatly contradicts this argument. It is settled under both federal and Massachusetts constitutional law that sexual offender registration laws are civil and remedial, and not primarily punitive in their purposes. See Smith v. Doe, 538 U.S. 84, 95-96 (2003); Kansas v. Hendricks, 521 U.S. 346, 361 (1997); Commonwealth v. Bruno, 432 Mass. 489, 500 (2000). A party challenging a facially civil remedial statute, such as the sex offender registry law, must provide “the clearest proof’ that the legislation is so punitive in either intent or effect that it negates its characterization as “civil.” See Dutil, Petitioner, 437 Mass. 9, 20 (2002). A regulatory statute causing incident punitive or deterrent consequences does not lose its civil remedial character so long as its primary purpose serves the public safety and welfare. See Opinion of the Justices, 423 Mass. 1201, 1222-23 (1996).
*29 Here, the purpose of the sexual offender registry-law — the reduction of danger to the community — is facially civil and regulatory. As a result, the classification and dissemination measures of the Massachusetts legislation do not violate the federal and state prohibitions against double jeopardy, see id. at 1242, nor do they offend the standard against ex post facto criminal legislation,[7] or contradict the ban against cruel and unusual punishment. See Commonwealth v. Olaf O., 57 Mass.App.Ct. 918, 919, rev. denied, 439 Mass. 1107 (2003); Opinion of the Justices, 423 Mass. at 1228, 1242. Moreover, the Commonwealth’s regulatory interest in public safety outweighs any privacy interest the plaintiff may have in his sex offender record. Id. at 1237. As a result, the registration and classification system does not violate the plaintiff s federal or state constitutional rights.
III. Conclusion
Based on the foregoing, the Court affirms the Board’s decision requiring the plaintiff to register as a Level Three sex offender.[8]
ORDER
Therefore, it is hereby ORDERED that the Plaintiffs Motion for Judgment on the Pleadings is DENIED and the Defendant’s Motion for Judgment on the Pleadings is ALLOWED.

 Me.Rev.Stat.Ann. tit. 17-A, §253(l)(b) is equivalent to Massachusetts’ crime of indecent assault and batteiy on a child under 14 as provided by G.L.c. 265, §13B.

 Pseudonyms will be used throughout this memorandum to protect the identify of the victims.

 The plaintiff was not indicted in Massachusetts until March 2, 1986. It appears from the record that Victim 2 was not interviewed by law enforcement authorities regarding the July 1984, incident until January 23, 1986.

 The plaintiff supports his argument by citing to Commonwealth v. Bruno, 432 Mass. 489 (2000), which held expert testimony was required at a temporary Sexually Dangerous Person hearing. The Supreme Judicial Court, however, foreclosed this argument in Doe No. 10216, holding G.L.c. 6, §§178C-178P does not mandate the use of expert testimony at a SORB hearing. 447 Mass. at 784-86.

 The full list of factors is set out at 803 Code Mass. Regs. §1.40, which includes all the factors articulated by the Legislature in G.L.c. 6, §178K.

 The plaintiff also appears to argue that the Examiner erred in relying on a Department of Mental Health report from 1998 and a diagnosis of pedophilia rendered in 1990. Because the reports were issued by experts, the plaintiff argues, the Board, as the party introducing them, was required to call the authors as witnesses. While correct in stating that an expert report shall be introduced only if the author of the report is called as a witness, see 803 Code Mass. Regs. 1.18(6), the plaintiff fails to realize that an expert witness is defined as “[a] licensed mental health professional, excluding members of the Sex Offender Registry Board, whose testimony and report offenng an opinion as to the sex offender’s rtsk of reoffense and degree of dangerousness were prepared expressly for reliance by a party at a hearing conducted to 803 Code Mass. Regs. 1.07-1.26.” As plaintiff has failed to show that the reports relied on by the Examiner were prepared expressly for his hearing, his argument fails and the Examiner was justified in her analysis.

 Massachusetts law closely parallels the federal courts’ interpretation of the federal Constitution’s Ex Post Facto and Double Jeopardy clauses. See Detail, petitioner, 437 Mass. at 19-20 n.8 (2002) (ex post facto), 19-20 (double jeopardy).

 Although the plaintiff has been classified as a Level Three offender, he may request a redetermination of his classification three years from the date of his final classification. See 803 Code Mass. Regs. §137C (2004).