NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1104

J.W., SEX OFFENDER REGISTRY BOARD NO. 25324

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, J.W., appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (board) as a level two sex offender. J.W. makes three arguments: (1) procedural due process requires the board to use expert evidence in support of its classifications, which the board failed to do here; (2) the hearing examiner (examiner), despite applying board classification factor 29 (offense-free time in the community),[1] gave insufficient consideration to

_____

[1] See 803 Code Mass. Regs. § 1.33(29) (2016). Hereafter we refer to the board's classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of § 1.33. The regulations were amended in 2025, but neither party argues that the amendments affected this case.

J.W.'s offense-free time; and (3) the examiner failed to explain sufficiently the weight she gave to various classification factors, rendering her decision arbitrary and capricious. We affirm the judgment.

Background. We recite the background facts found by the examiner. In 1980, when J.W. was thirteen years old, he was adjudicated delinquent by reason of committing assault with intent to rape, the victim being a fifteen year old girl who was delivering newspapers in J.W.'s neighborhood (victim 1). J.W. was committed to the custody of the Department of Youth Services, from which he was discharged in mid-1983.

In 1993, when J.W. was twenty-five, he was convicted in Superior Court of rape, indecent assault and battery, and numerous other offenses against a twenty-seven year old woman (victim 2). J.W. was sentenced to an aggregate of from eight to twelve years committed, with three to five years suspended until 2010 while he was on probation. In 2004, J.W. was released from incarceration, but in 2005 he was civilly committed as a sexually dangerous person (SDP) to the Massachusetts Treatment Center, where he remained for two years.

In 2007, J.W. was released from his SDP commitment and was notified of his duty to register as a level three sex offender. That classification became final when he failed to appear at the

2

hearing he had requested on the matter.  In 2008, J.W. committed armed robbery, for which he was convicted in 2009 and was incarcerated until 2016.

In 2020, J.W. requested reclassification, and he received a board hearing in 2023, when he was fifty-six years old.  At the hearing, J.W. asserted a change in circumstances based, among other things, on his advanced age and his offense-free time in the community.  The examiner reclassified J.W. as a level two offender.  She applied three high-risk factors (factors 2, 4, and 5), ten risk-elevating factors (factors 7, 8, 9, 10, 11, 13, 19, 20, 21, 22), four risk-mitigating factors (factors 29, 30, 32, 34), and one additional factor (factor 35).  She found by clear and convincing evidence that J.W. had a moderate risk of reoffense and a moderate degree of dangerousness and that public safety would be served by Internet publication of his registry information.

Discussion.  1.  Need for expert evidence.  J.W. argues that procedural due process requires the board, whenever it classifies an offender, to support its classification with expert evidence.[2]  J.W. bases his argument on the procedural due

---

[2] It is settled that the board's statute and regulations do not themselves require it to offer expert evidence.  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 637 (2011); Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 786

process balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), under which we balance "the private interests affected by an agency decision; the risk of an erroneous deprivation of those interests; the probable value, if any, of additional or substitute procedural safeguards; and the governmental interests involved." Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 303 (2015). Those governmental interests include not only protecting public safety while avoiding overclassification, id. at 313-314, but also "the fiscal and administrative burdens" entailed by the proposed additional procedural safeguard. Doe, Sex Offender Registry Bd. No. 3844 v. Sex Offender Registry Bd., 447 Mass. 768, 775 (2006), quoting Mathews, 424 U.S. at 335.

With the exception of the private interests affected, J.W. has failed to provide adequate evidence or argument to assess these factors. He assumes but does not demonstrate with any specificity the probable value of expert evidence in avoiding erroneous deprivations while maintaining public safety. He does not address at all the fiscal and administrative burdens of imposing the new requirement he argues is required. He therefore has not shown that the board's failure to offer expert

(2006). Those decisions do not, however, resolve J.W.'s constitutional argument.

4

evidence in support of its classification, in his case let alone as a general matter, violates procedural due process requirements.

2. <u>Offense-free time in community</u>. J.W. argues that the examiner, despite applying factor 29, gave insufficient consideration to what J.W. asserts is the proper measure of his offense-free time in the community, or to the time since his last sex offense. We are unpersuaded.

Under factor 29, as applied to an adult male such as J.W., "[t]he risk of reoffense decreases for most offenders after living in the community offense-free for five to ten years," and it "lowers substantially after ten years of offense-free time in the community." Factor 29(a). For an offender such as J.W. who was in custody for his offenses, "the offense-free time begins on the date of an offender's most recent release from custody for a sex offense or non-sexual violent offense."[3] Factor

_____

[3] We quote the 2016 version of factor 29. Under the 2025 version, "[o]ffense-free time in the community begins on the date of the sex offender's most recent release from custody for a sex offense," but the factor "may be given less mitigating weight" where, among other things, the offender was "removed from the community for some portion of time since last committing a sex offense or sexual misconduct for any reason, including . . . any incarceration." 803 Code Mass. Regs. § 1.33(29) (2025). In such cases, "the decrease in mitigation, if any, should be commensurate with the amount of time removed from the community." <u>Id</u>.

5

29(a).  Factor 29(a) cites various research articles as showing
that these considerations are relevant to the risk of reoffense.

Applying factor 29 here, the examiner determined that,
because J.W. had been offense-free since his 2016 release from
custody on his armed robbery sentence, he had accumulated seven
years offense-free in the community.[4]  She therefore gave factor
29 "moderate" risk-mitigating weight.

J.W. argues that this was insufficient, for two reasons.
First, he contends that his offense-free time should be
calculated from his release from custody for his last sex
offense, i.e., his 2007 release from his SDP commitment, sixteen
years before the board hearing.[5]  But he cites no research in
support of this position.  He offers no basis on which we could
substitute our judgment on the issue for the judgment embodied
in the board's duly-adopted regulation.

Second, J.W. argues that factor 29, and the regulations as
a whole, "do not accurately assess risk or dangerousness because
they do not require hearing examiners to consider the length of
time since an individual's last sex offense, here over [thirty]

_____

[4] Like the examiner, we refer to the offense-free time
calculated as of 2023, when J.W.'s hearing occurred.

[5] Despite J.W.'s assertion, his 2007 release occurred
sixteen (not fifteen) years before his 2023 board hearing.  The
discrepancy is not material to our analysis.

6

years, when applying the remaining factors."[6]  Again, however,

J.W. cites no research articles or other evidence concluding

that the raw amount of time since an offender's last sex offense

is relevant in assessing risk of reoffense, without regard for

whether the offender spent any of the intervening time in

custody.  J.W. himself, after his 1993 sex offense convictions,

was in custody for fourteen years on account of those

convictions and his SDP commitment (1993-2007), and was in

custody for another seven years on account of his armed robbery

conviction (2009-2016).  This totaled twenty-one years in which

J.W. had no access to the community, and it is not intuitively

obvious that his not having committed any sex offense during

those years is a reliable indicator of a lowered risk of sexual

recidivism once released into the community.

    Moreover, J.W. offers no research articles or other

evidence supporting his argument that the amount of time since

his last sex offense must be considered "when applying the

remaining factors."[7]  J.W. appears to assume that the passage of

time since a sex offense is an overarching consideration that

---

[6] J.W. committed his sex offenses against victim 2 in late
1992 and was convicted of these offenses in mid-1993.

[7] J.W. acknowledges that the examiner gave reduced weight to
factor 13 (noncompliance with community supervision) based on
the passage of time since he committed a sex offense while on
probation.

7

necessarily affects the weight to be given every other factor. Each of those factors is supported by research cited in the board's regulations, but J.W. makes no effort to demonstrate that giving each such factor less (or more) weight based on the time since the last sex offense is required by, or even consistent with, that research. There is thus no basis for us to require an examiner to adopt J.W.'s approach, or to depart from the principle that "[a] hearing examiner has discretion . . . to consider . . . how much weight to ascribe to each factor." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014).

We therefore reject J.W.'s argument that the examiner failed to give sufficient consideration to J.W.'s offense-free time in the community or the time since his last sex offense.

3. Examiner's explanations. J.W. argues that the examiner failed to explain sufficiently both (a) the weight she gave to certain classification factors, and (b) on what issue(s) she considered those factors, rendering her decision arbitrary and capricious.[8] Addressing the arguments in that order, we see only

_____

[8] J.W. also asserts that the claimed lack of explanation renders the decision unsupported by substantial evidence, an abuse of discretion, and undeserving of the deference typically afforded agency decisions by reviewing courts. These assertions require no further discussion, as they are unsupported by any developed argument and appear to add nothing to J.W.'s claim that the decision was arbitrary and capricious.

8

one arguable error, which did not result in sufficient prejudice to entitle J.W. to relief.

a. <u>Amount of weight</u>.  J.W.'s first contention is that the examiner failed to explain what weight she gave to seven different factors (factors 4, 5, 10, 19, 20, 21, and 22), instead saying only that they "applied."  But, as to factor 4 (age at first offense), factor 5 (adjudicated SDP or released from civil commitment), factor 21 (diverse victim type), and factor 22 (number of victims), their language contains no reference to varying weights.  It was therefore not arbitrary or capricious for the examiner here not to specify the amount of weight she gave them.[9]

As to factor 10 (contact with criminal justice system) and factor 19 (level of physical contact), their language does refer to weighting.  But J.W. overlooks that the examiner did specify the weight given to each of those factors here.  In the decision's "discussion" section, the examiner gave factor 10 "full weight," and gave factor 19 "increased weight."

---

[9] Factor 22 (number of victims) might naturally lend itself to being given additional weight when an offender has sexually offended against more than two victims, with the degree of added weight depending on the number in excess of two.  Here, that the examiner noted that J.W. had offended against two victims and on that basis merely "applie[d]" factor 22 suggests that the examiner gave it no such additional weight.  J.W. does not argue otherwise.

9

Finally, as to factor 20 (diverse sexual behavior), its language does call for weighting. "In determining the weight applied to factor 20, the [b]oard shall consider the number, types, and frequency of the diverse sexual behaviors." Factor 20(a). The examiner should have specified how much weight she gave this factor as applied to J.W. That said, the examiner did state that J.W. "committed contact sexual assaults, stole [v]ictim 2's belongings for sexual arousal, cross-dressed in order to get aroused, and committed sadistic sexual acts all in the commission of his sexual offending episodes." We may infer from these characterizations that the examiner gave factor 20 at least moderate weight. This would be consistent with the examiner's overall conclusion that J.W.'s risk of reoffense and degree of dangerousness were moderate. Any error in failing to give a more detailed explanation did not prejudice J.W.'s substantial rights. See Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022).

b. Issue(s) on which factors were considered. J.W.'s second contention is that the examiner failed to explain whether she considered certain factors as relevant to J.W's risk of reoffense, his degree of dangerousness, or both. J.W. points to the examiner's treatment of five factors discussed above

10

(factors 10, 19, 20, 21, and 22), and also to factor 13 (non-compliance with community supervision).

J.W. again overlooks that the examiner specified, in the discussion decision of her decision, the issue(s) to which each factor related. On the issue of risk of reoffense, the examiner expressly considered (among others) factors 10, 13, 20, 21, and 22. On the issue of degree of dangerousness, the examiner expressly considered (among others) factors 10, 19, and 22.

4. Other issues. J.W.'s brief includes broad-based challenges to the board's classification system. He asserts that "[d]espite the relatively low rates of [sex offender] recidivism, the [b]oard's entire regulatory scheme is calculated to find more individuals 'high risk' and 'highly dangerous' resulting in hearing examiners over-designating offenders, as happened in this case." He further contends that the board's classification regulations "overemphasize[] the application of risk-elevating factors," by including "six high-risk and twenty risk-elevating factors, but only seven risk-mitigating factors and four undesignated additional factors."

The basis of these claims is unclear. To the extent that J.W. seeks to invalidate any of the governing statutes or board regulations, such claims cannot be resolved in this case brought solely under G. L. c. 30A, § 14, but must be raised through a

11

claim for declaratory judgment.  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 630-631 (2011).  Just as "a hearing examiner is obligated to apply the risk factors set forth in [the board's regulations] irrespective of the examiner's opinion as to their constitutionality," so must the examiner follow them irrespective of her (or our) opinion of their wisdom or efficacy as a policy matter.  See id. at 630.  Even if we were to agree with J.W.'s systemic policy critiques, a remand so that the hearing examiner could act upon them would be futile.  See id. at 631.

To the extent J.W. contends that, even accepting the validity of the statutes and regulations, the hearing examiner failed to consider relevant evidence bearing on J.W.'s own classification or how the statutes and regulations should be applied to J.W., such a claim could be raised in this action under chapter 30A.  See Doe No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602-610 (2013).  Nevertheless, J.W. has not identified with specificity what evidence the examiner failed to consider, or how any statute or regulation was misapplied to him.  Moreover, we see nothing in the Superior Court record

suggesting that J.W. raised such claims there. We therefore do not address such claims further.

Judgment affirmed.

By the Court (Rubin, Sacks & Smyth, JJ.[10]),

Clerk

Entered: May 4, 2026.

---

[10] The panelists are listed in order of seniority.