BRIAN E. VARGA *vs.* BOARD OF REGISTRATION OF
CHIROPRACTORS.

Suffolk. October 7, 1991. - December 5, 1991.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ

*Chiropractor. Board of Registration of Chiropractors. Due Process of
Law*, Administrative hearing. *Constitutional Law*, Impartial tribunal.
*Administrative Law*, Substantial evidence. *Public Board.*

There was no merit to a chiropractor's challenge to the validity of action
by the Board of Registration of Chiropractors on the ground that two
of the board's seven members were not qualified to serve at the time an
adjudicatory hearing was held resulting in the suspension of the chiro-
practor's license to practice chiropractic. [303-304]

A chiropractor whose license to practice chiropractic was suspended after
an adjudicatory hearing before the Board of Registration of Chiroprac-
tors was not denied his right to an impartial tribunal under art. 29 of
the Massachusetts Declaration of Rights, nor any due process right se-
cured by arts. 1, 10, and 12, by the refusal of the board to disqualify
one of its members from participating in the disciplinary proceedings,
which had been initiated by a complaint from an insurer for which the
board member had reviewed claims, where the member in question was
not the sole decision maker and his involvement with the insurer and
other insurers was known to the other board members, where the asser-
tions against the member were unproved and doubtful, where there was
no suggestion that any other board member was biased, and where the
insurer was not a party to the proceedings. [304-308]

In a proceeding before the Board of Registration of Chiropractors regard-
ing a chiropractor's treatment of a particular patient, there was sub-
stantial evidence to support the board's conclusions that the chiroprac-
tor engaged in overutilization of practice by treating the patient
excessively in violation of 233 Code Mass. Regs. § 4.06, assessed im-
proper charges in violation of 233 Code Mass. Regs. § 4.07, and failed
to provide a proper and sufficient rationale for the use of particular
procedures in violation of 233 Code Mass. Regs. § 4.03. [308]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 7, 1991.

The case was heard by *Lynch*, J.

*Paul W. Shaw* (*Robert A. Griffith* with him) for the plaintiff.

*David Hofstetter* for the defendant.

WILKINS, J. Brian E. Varga appeals from a judgment entered by a single justice of this court that in effect affirmed a decision of the Board of Registration of Chiropractors (board) suspending Varga's license to practice chiropractic for six months, to be followed by two years of probation. Varga raises three issues. First, he argues that the board was improperly constituted when it held its adjudicatory hearing and, therefore, had no jurisdiction to do so. Varga next challenges the participation of one board member who, he argues, should have recused himself. Finally, Varga asserts that the board's decision is not supported by substantial evidence. We reject each argument.

1. The board did not lack jurisdiction to act on Varga's disciplinary matter. That challenge is based on the regulatory statute in effect at the time of the agency hearing requiring two of the board's seven members to be registered physicians. (G. L. c. 13, § 64, as amended by St. 1971, c. 1099, § 19).[1] No board member was a registered physician. Although the challenge is labeled as jurisdictional, it is really a challenge to the validity of the board's action on the ground that two of its members were not qualified to serve.

There are several weaknesses in Varga's argument. At least a majority of the board was properly constituted at all times and acted in the agency proceedings. Moreover, Varga

---

[1]The statement that § 64, as amended at the time of the hearing in this matter, required that two registered physicians serve on the board is not quite correct. The last sentence of § 64 then provided that, "[i]f one or both physicians so appointed to serve on said board refuses to serve, a chiropractor, qualified as hereinbefore provided, may be appointed in his stead."

Varga has not demonstrated that the composition of the board did not come about through the application of that last sentence. The board, however, does not raise this point. We, therefore, ignore it except to the extent that that last sentence shows that the Legislature did not regard physician membership on the board to be indispensable.

lacks standing to raise his challenge. This is not a civil action against a person who seeks to justify his otherwise unlawful conduct on the authority of his public office or position, as to which a direct challenge to a public employee's claim of authority is permitted. See *Appley* v. *Locke*, 396 Mass. 540, 545-546 (1986) (claimed tortious interference with employment relationship); *Short* v. *Symmes*, 150 Mass. 298, 299-300 (1889) (false imprisonment). This is rather a collateral challenge to the right of two members of the board to hold office, stated in a proceeding challenging the action of an administrative agency. We have not permitted such collateral attacks on a public officer's right and title to office and have generally left such matters for the discretionary attention of the Attorney General. See *Commonwealth* v. *Loretta*, 386 Mass. 794, 797-798 (1982); *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 74-75 (1977), and cases cited. See also G. L. c. 249, § 9 (1990 ed.). Finally, at the time of the board's decision, on May 28, 1991, the governing statute had been amended to eliminate any requirement that two board members be physicians. See G. L. c. 13, § 64, as appearing in St. 1990, c. 155, § 1, approved August 2, 1990. The board's decision was issued, therefore, at a time when its composition was beyond valid challenge.[2]

2. Framing his argument solely in terms of an unconstitutional denial of due process of law, Varga argues that a board member, Allan R. Steingisser, should not have participated in the disciplinary proceedings. Varga asserts that the proceedings are a nullity because Steingisser had a disqualifying bias and interest in them.

A consultant to a subsidiary of the Allstate Insurance Company (Allstate) filed the complaint against Varga. In October, 1989, Varga moved for the recusal of any board member who had acted for, or had at any time been compensated by, Allstate or any Allstate subsidiary.

---

[2]Apparently five members of the board joined in its decision. Two members who had not been appointed at the time of the hearing did not participate. For some reason, the final decision does not recite which board members participated in it.

In November, 1989, before the board had passed on Varga's recusal motion, the chief of the legal division of the State Ethics Commission sent to counsel for the board an informal opinion that Steingisser could participate in the Varga proceedings, without violating G. L. c. 268A, § 6 (1990 ed.), because Steingisser was not an Allstate employee and because he did not have a financial interest in the Varga proceedings. The chief legal counsel added that to comply with the standards of G. L. c. 268A, § 23 (b) (3) (1990 ed.), and to "dispel any appearance of undue favoritism," Steingisser should disclose to his "appointing official" the relevant facts concerning his claims review relationship with Allstate and his prior review of matters involving Dr. Varga.

Steingisser accordingly then wrote to the Governor in December, 1989, disclosing facts concerning his review for various insurance companies, including Allstate, of claims for reimbursement submitted by chiropractors. He stated that 20% to 25% of his practice consisted of the review of chiropractic claims on direct referral from insurance companies. Since April 1, 1987, Steingisser had reviewed fourteen claims for Allstate for which he had been paid $1,275. Allstate subsequently filed complaints with the board in five of those cases. Steingisser had not reviewed any claims that Varga had submitted to Allstate, including the one that led to the complaint involved in this case. He had, however, reviewed claims that Varga had submitted to other insurers.

Varga then moved specifically that Steingisser be recused from participation in his proceedings, relying on art. 29 of the Massachusetts Declaration of Rights[3] and those articles

---

[3]Article 29 provides in part: "It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." We have said that the provisions of art. 29 are "at least as rigorous in exacting high standards of judicial propriety as are those of the Fourteenth Amendment to the Constitution of the United States." *King* v. *Grace*, 293 Mass. 244, 247 (1936). We shall treat art. 29 as fully applicable to Varga's claim that Steingisser, not a judge but an agency decision maker, should not have participated in the board proceeding. See *Police Comm'r of Boston* v. *Municipal Court of the W. Roxbury Dist.*, 368 Mass. 501, 507 (1975). See also *Withrow* v. *Larkin*, 421 U.S. 35, 46

in the Declaration of Rights (arts. 1, 10, and 12) that provide the right to due process of law. He made no mention of the Conflict of Interest Law (G. L. c. 268A) or of Federal constitutional rights. On February 8, 1990, the board denied the motion.

Varga argues that Steingisser had strong links to the insurance industry and continued to review claims while a board member. Varga notes, as demonstrative of Steingisser's link to Allstate, that, in his letter to the Governor, Steingisser disclosed that he had learned that Allstate intended to await the board's decision before deciding whether to pay Varga's claims. Varga contends that the hearing was impermissibly tainted by Steingisser's knowledge that Allstate, with whom Steingisser had a continuing professional relationship, had a financial stake in the outcome.

We reject the argument that Varga was deprived of a fair hearing by the board. We start with the observation that it would be a rarity that alleged bias and interest which did not violate our strict Conflict of Interest Law could nevertheless violate the constitutional right to a fair hearing. We are dealing, moreover, with the alleged bias of only one board member whose involvement with Allstate and other insurers was known to the other board members, who were, therefore, in a position to guard against any improper influence from Steingisser. Steingisser's compensation from Allstate averaged less than $500 each year. The claim that Steingisser acted improperly in the Varga matter in order to ingratiate himself to Allstate is unproved and, more importantly, is tenuous. As a practicing chiropractor, Steingisser would hardly favor board action that unreasonably denied insurance payments for treatment that was consistent with good professional practice. We will not presume that Steingisser, a member of a professional disciplinary board, voted and acted improperly, in violation of his oath of office and professional obligation,

(1975) (applying due process fair trial standards to an administrative agency).

on a matter before the board in order to aid his relationship with the insurance company that filed the complaint.

This is not a case in which it appears "that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable." *Withrow* v. *Larkin*, 421 U.S. 35, 47 (1975). Cases in which the Supreme Court has identified due process violations based on the pecuniary interest of the adjudicator have involved substantially greater probabilities of bias. See *Gibson* v. *Berryhill*, 411 U.S. 564, 578-579 (1973) (pecuniary interest of all members of board of optometry constitutionally disqualified them from conducting particular hearings); *Ward* v. *Monroeville*, 409 U.S. 57, 60, 62 (1972) (interest of mayor in municipal finances, which were in substantial part drawn from fines, costs, and fees for traffic violations, barred mayor from adjudicating charge of traffic violation).

Even if we were to agree that the more specific language of art. 29 sets a higher standard than the due process standards of the State and Federal Constitutions, the assertions against Steingisser are unproved and doubtful, and there is no suggestion that any other board member was biased. The fact of Steingisser's bias is itself speculative, and the prospect of any such bias influencing the decision making of other board members is implausible.

If Steingisser had been the sole decision maker, this issue would have been a close one. In *Beauregard* v. *Dailey*, 294 Mass. 315, 325 (1936), this court nullified a master's report because, at the time of the hearing before the master, the master was counsel in a different matter for one of the parties in the case before him. We said that the master was open to suspicion of bias or prejudice, that the relationship of attorney and client might consciously or unconsciously influence his action as master, and that under the high standards set by this court, the master was disqualified. In the case before us, Steingisser was not the sole decision maker, and Allstate was not a party to the agency proceedings. Better practice suggests, but due process does not require, that a board member in the position of Steingisser should recuse

himself from any proceeding initiated by a complaint from an insurer for which the board member reviews claims.

3. We have considered the record and conclude that there was substantial evidence to support the board's conclusion that Varga engaged in overutilization of practice by treating a particular patient excessively (233 Code Mass. Regs. § 4.06 [1986]), assessed improper charges (233 Code Mass. Regs. § 4.07 [1986]), and failed to provide a proper and sufficient rationale for the use of particular procedures (233 Code Mass. Regs. § 4.03 [1986]).[4] See G. L. c. 112, §§ 61 and 93 (1990 ed.). Our task is to decide whether the board's findings are supported by substantial evidence and not to engage in our own assessment of the evidence. *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 354 (1988).

A chiropractor, called by the board prosecutor as an expert witness, testified that the frequency of treatment of the patient was unjustified after a certain number of visits and that Varga should not have continued treatments without performing an intermediate physical examination. The board was fully warranted in relying on the expert opinion of a witness who did not treat the patient and formed his opinion from the medical records. Varga's argument to the contrary is without merit. Contrary evidence from other experts presented questions of credibility for the board to resolve. In resolving them, the board did not, as Varga claims, treat the evidence unfairly.

*Judgment affirmed.*

---

[4]Section 4.03 is more than a definitional statement, as Varga argues. It sets forth standards of performance.