JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 15606 *vs.*
SEX OFFENDER REGISTRY BOARD.

Hampden. October 7, 2008. - December 12, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Sex Offender. Sex Offender Registration and Community Notification Act.
Administrative Law, Standing. Jurisdiction, Sex offender. Evidence, Expert
opinion, Sex offender. Witness, Expert.*

This court, in order to address any questions concerning the authority of the
Sex Offender Registry Board (board), assumed that a plaintiff challenging
a classification decision of the board had standing to challenge its alleg-
edly irregular composition. [788-790]

There was no merit to a sex offender's challenge to the validity of a clas-
sification decision by the Sex Offender Registry Board (board) on the
ground that the seven-member board, which contained only one mental
health professional, did not satisfy certain statutory membership require-
ments, where G. L. c. 6, § 178K (1), authorizes the board to carry out its
legislatively mandated duties, regardless of whether it is fully constituted
with two licensed psychologists or psychiatrists, as long as there are four
sitting members [790-791]; further, the plaintiff failed to demonstrate that
the lack of one additional licensed mental health professional affected his
classification, or that the board, because of its composition, was not
competent to develop and promulgate regulations governing the classifica-
tion process and, moreover, lacked the expertise necessary to assess his
risk of recidivism [791-793].

A hearing officer of the Sex Offender Registry Board (board) acted within his
discretion in denying a plaintiff sex offender's request for fees to hire an
expert to contest the validity of certain test results, in circumstances where
an expert was clearly not needed to shed light on the results and would not
have assisted the hearing officer in determining the appropriate classifica-
tion level for the plaintiff [793-794]; further, this court found nothing
improper in the hearing officer's consideration of the test results [794-795].

A Superior Court judge hearing a plaintiff sex offender's appeal from a clas-
sification decision of the Sex Offender Registry Board (board) did not
abuse her discretion by denying the plaintiff's motion to introduce certain
supplemental evidence, where the plaintiff did not make a substantial
showing that the evidence would have added anything to the board's
decision. [795]

[1]Justice Greaney participated in the deliberation on this case and authored
this opinion, but retired before the opinion was issued.

CIVIL ACTION commenced in the Superior Court Department on April 7, 2006.

The case was heard by *Mary-Lou Rup,* J., on a motion for judgment on the pleadings, and a motion for leave to present additional evidence also was heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Stephen R. Kaplan* for the plaintiff.

*David L. Chenail* for the defendant.

*Andrew S. Crouch,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. The plaintiff is a sex offender convicted pursuant to guilty pleas to one charge of rape of a child under sixteen years, G. L. c. 265, § 23, and two charges of indecent assault and battery on a child under the age of fourteen years, G. L. c. 265, § 13B. He challenges the final decision of the Sex Offender Registry Board (board) ordering him to register with the board as a level three sex offender.[2] The decision was issued by a hearing examiner, following an evidentiary hearing conducted pursuant to G. L. c. 6, § 178L, and in accordance with G. L. c. 6, § 178K, and regulations promulgated thereunder. The examiner's decision became the final decision of the board. See G. L. c. 6, § 178L. A judge in the Superior Court conducted judicial review, pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14. The judge denied the plaintiff's motion for judgment on the pleadings and his motion for leave to present additional evidence, thereby, effectively, affirming the plaintiff's level three classification. Judgment entered in favor of the board. The plaintiff appealed, and we granted his application for direct appellate review.

The plaintiff raises multiple issues. His primary claims arise from the fact that, at all times relevant to his case, the composition of the seven-member board failed to include, as required by the board's governing regulatory statute, G. L. c. 6, § 178K,

---

[2] A level three classification requires the sex offender to register with the Sex Offender Registry Board (board) and authorizes the dissemination to the public of the sex offender's registration information. See G. L. c. 6, §§ 178D, 178I-178K. A level two or three offender must also appear in person annually at the local police department where the offender lives or works to verify the accuracy of the registry information on file. See G. L. c. 6, § 178F ½.

two licensed psychologists or psychiatrists who have special expertise in the assessment and evaluation of sex offenders and knowledge of the forensic mental health system. According to the plaintiff, the deficiency in the qualifications of its membership deprived the board of subject matter jurisdiction. The plaintiff further argues that, because of its inadequate composition, the board was not competent to develop and promulgate regulations to govern level evaluations and, moreover, lacked the expertise necessary to assess his risk of recidivism. Based on these arguments, the plaintiff concludes that his classification as a level three sex offender is invalid. The plaintiff also contests the hearing examiner's consideration of the results of a penile plethysmography test[3] and argues that the board should have allowed him funds to hire an expert to contest the test results at his administrative hearing. Finally, the plaintiff argues that the judge who reviewed the board's final decision erred when she denied his motion seeking leave to present additional evidence that would have demonstrated significant rehabilitative progress on his part during the year following the administrative hearing. We reject each of these arguments and affirm the judgment.

We briefly set forth the background of this case, taken from the uncontested findings of the hearing examiner and additional documentary evidence contained in the administrative record. On March 24, 2000, the plaintiff entered guilty pleas to the indictments charging him with rape of a child and indecent assault and battery on a child. The charges were based on sexual encounters that occurred over a period of four months in 1999, between the plaintiff, then twenty-seven years of age, and a six year old boy whom the plaintiff was babysitting. The victim was the son of one of the plaintiff's coworkers. The plaintiff was sentenced to a term of imprisonment in the State prison of from three to five years, to be followed by concurrent ten-year terms of supervised probation. He began his incarceration on March 24, 2000. During his incarceration (his first of any kind) he received

---

[3] A plethysmograph is an instrument for determining and registering variations in the volume of different parts of the body. The Appeals Court has described penile plethysmography as "a technique that records variations in the circumference of the penis as the study subject is exposed to various visual stimuli and graphically records his tumescence during the test procedure." *Ready, petitioner,* 63 Mass. App. Ct. 171, 177 n.6 (2005).

twenty disciplinary reports, including infractions for disobeying orders, self-mutilation (cutting his wrists), disruptive behavior, attempting to assault a correctional officer, and engaging in unauthorized consensual sexual intercourse with another inmate. He was released on May 17, 2004, and began his term of supervised probation, which included conditions that he undergo sex offender counselling and psychological counselling deemed appropriate by the probation department, and that he not reside, or be employed, with children under the age of sixteen years.

At about the time of the plaintiff's release from incarceration, the Commonwealth filed a petition to have him civilly committed as a sexually dangerous person, pursuant to G. L. c. 123A, § 12. On June 22, 2004, a judge in the Superior Court concluded that there was probable cause to believe that the plaintiff was a sexually dangerous person and ordered the plaintiff held at the Massachusetts Treatment Center (treatment center), pending a hearing pursuant to G. L. c. 123A, § 13. On October 5, 2004, the plaintiff was found not to be a sexually dangerous person, and he was released from the treatment center. On January 20, 2005, the board notified the plaintiff of its recommendation that he register, pursuant to G. L. c. 6, § 178K (2) (*c*), as a level three sex offender. The plaintiff challenged the recommendation and, pursuant to G. L. c. 6, § 178L, requested a de novo administrative hearing on his classification.

The hearing took place on July 19, 2005. The sole witness was the plaintiff, who acknowledged that he had repeatedly molested the victim and candidly admitted performing oral sex on the boy more times than was reported to the police. The hearing examiner assessed all the evidence presented, including the police reports; court records; documents from the department of correction compiled during the plaintiff's incarceration period; his probation records; and his sex offender treatment status reports. On February 13, 2006, the hearing examiner issued a written decision classifying the plaintiff as a level three sex offender and ordering him to register with the board. As has been indicated, the examiner's decision became the final decision of the board in accordance with G. L. c. 6, § 178L.

The plaintiff sought judicial review of the decision, raising, in an argument to the judge in the Superior Court, a claim not presented to the hearing examiner, namely, that the membership

of the board did not satisfy the professional requirements set by the Legislature in its authorizing statute, G. L. c. 6, § 178K, and, therefore, the board was without subject matter jurisdiction to proceed against him. The judge reviewed the administrative record under the standards set forth in G. L. c. 6, § 178M, and G. L. c. 30A, § 14, and concluded that the board had jurisdiction over the subject matter of the plaintiff's proper classification. The judge also concluded that the board's final decision was supported by substantial evidence.

We now consider each of the plaintiff's arguments under the standards set forth in G. L. c. 30A, § 14. The board's decision will be reversed or modified only if we determine, based on our review of the record, that substantial rights of the plaintiff may have been prejudiced because the board's decision was in violation of constitutional provisions; beyond the scope of its authority or jurisdiction; unsupported by substantial evidence; arbitrary or capricious; an abuse of discretion; or otherwise not in accordance with law. See G. L. c. 6, § 178M.

1. General Laws c. 6, § 178K, provides that the membership of the board include "at least two licensed psychologists or psychiatrists with special expertise in the assessment and evaluation of sex offenders and who have knowledge of the forensic mental health system."[4] It is undisputed that, at the time of the plaintiff's classification, the board had only one such mental health professional. The board's composition, therefore, did not satisfy the statutory membership requirements. The issue is whether this inadequacy stripped the board of jurisdiction to act, a deficiency that would, as argued by the plaintiff, render his classification as a level three sex offender invalid.[5]

a. As an initial matter we address the question of standing.

---

[4]The statute additionally provides that the board shall include "at least one licensed psychologist or psychiatrist with special expertise in the assessment and evaluation of sex offenders, including juvenile sex offenders and who has knowledge of the forensic mental health system." G. L. c. 6, § 178K. It does not appear that this provision has significance to our consideration of this case.

[5]There is some persuasiveness in the Commonwealth's suggestions that this claim is not one of jurisdiction but, rather, one that the plaintiff's classification is invalid and that, in any case, the plaintiff waived any claim derived from the board's inadequate composition by failing to raise it before the board. See *Gill* v. *Board of Registration of Psychologists*, 399 Mass. 724, 728

The Commonwealth contends that the plaintiff lacks standing to contest the irregular composition of the board because he has not sufficiently alleged that the irregularity adversely affected his classification or that he was otherwise aggrieved by the absence of one licensed psychiatrist or psychologist on the board. The plaintiff responds that he "is the target of everything the [b]oard has done in the exercise of all of its powers," and that traditional principles of standing, which recognize the right of a person to "allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred," fully support his standing in this case. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). The plaintiff also quotes *School Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 579-580 (2007).

The standing concepts discussed in the cases cited by the plaintiff are generally sound. They were considered, however, in the context of a challenge to an administrative decision by means of an action, pursuant to G. L. c. 231A, for a declaratory judgment and are not directly on point. Here, the Legislature has expressly granted the plaintiff the right to challenge the board's classification of his sex offender status. See G. L. c. 6, § 178M. No one contests the plaintiff's standing to challenge the validity of the board's final decision. Our concern focuses on whether the plaintiff may include in this challenge an objection to the board's authority to act at all.

The plaintiff's standing to raise this objection appears to be governed by *Varga* v. *Board of Registration of Chiropractors*, 411 Mass. 302 (1991). In that case, we considered whether the board of registration of chiropractors (board of registration) could validly suspend the plaintiff's license to practice chiropractic for six months and require him to undergo two years of probation. See *id.* at 303. The plaintiff claimed that the board of

(1987), quoting *Saint Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 470 (1946) ("Where the contention is that the board is acting beyond its jurisdiction, the board should have an opportunity to ascertain the facts and decide the question for itself"). Nevertheless, we accept the phraseology as framed by the plaintiff for purposes of our discussion above. Issues relating to subject matter jurisdiction are nonwaivable and may be raised at any time. See *Central Transp., Inc.* v. *Package Printing Co.*, 429 Mass. 189, 189 (1999).

registration lacked jurisdiction to do so because the regulatory statute in effect at the time of the agency hearing required two of the board of registration's seven members to be registered physicians. See G. L. c. 13, § 64, as amended by St. 1971, c. 1099, § 19.[6] No board of registration member was a registered physician. See *id*. We stated that "[a]lthough the challenge is labeled as jurisdictional, it is really a challenge to the validity of the board's action on the ground that two of its members were not qualified to serve." *Id*. Guided by what was said in *Commonwealth* v. *Loretta*, 386 Mass. 794, 797-798 (1982), and *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 74-75 (1977), and cases cited, we stated this about the plaintiff's standing: "This is . . . a collateral challenge to the right of two members of the board [of registration] to hold office, stated in a proceeding challenging the action of an administrative agency. We have not permitted such collateral attacks on a public officer's right and title to office and have generally left such matters for the discretionary attention of the Attorney General." *Id*. at 304.[7] The same principle applies to this case. Nevertheless, we shall assume standing and address the merits of the plaintiff's challenge (as did the *Varga* court), because a large number of offenders have been the subject of the board's proceedings over the past several years, and there should be no lingering questions as to their status. Future challenges to the board's jurisdiction based on its membership will be controlled by what was said in our *Varga* decision.

b. The board did not lack subject matter jurisdiction at any time relevant to this case. General Laws c. 6, § 178K (1), specifically states that "[a]s long as there are four sitting members, a vacancy shall not impair the right of the remaining members to exercise the powers of the board." Significantly, that statute

---

[6]That the statute, as amended at the time of the adjudicatory hearing in *Varga* v. *Board of Registration of Chiropractors*, 411 Mass. 302 (1991), permitted, in certain circumstances, a qualified chiropractor to serve on the board of registration in place of one, or both, licensed physicians, had no relevance to the *Varga* decision, except to the extent that it demonstrated "that the Legislature did not regard physician membership on the board [of registration] to be indispensable." *Id*. at 303 n.1.

[7]We recognize that the plaintiff has not singled out one particular member of the board to attack as unqualified to serve.

does not limit the types of board members that must comprise the "four sitting members." The board, therefore, is authorized to carry out its legislatively mandated duties, regardless of whether it is fully constituted with two licensed psychologists or psychiatrists.[8]

The regulation that guided the hearing examiner in his application of the statutory factors contained in G. L. c. 6, § 178K, to the plaintiff's case was part of the so-called Sex Offender Registry Rules and Regulations, set forth in 803 Code Mass. Regs. §§ 1.00-1.41, promulgated by the board on August 31, 2002.[9] The board's membership, at that time, contained three licensed psychologists or psychiatrists, one of whom had expertise with juvenile sex offenders, and therefore, the board was in full compliance with G. L. c. 6, § 178K. The regulations have the effect of law, and although the plaintiff suggests otherwise, there is no indication that the board is required "to constantly update the factors according to increasing experience and lore."

c. To the extent that the plaintiff asserts that his classification is invalid because the board's proceedings were "tainted," the plaintiff has not demonstrated, or even attempted to demonstrate, that the lack of one additional licensed psychologist or psychiatrist affected his classification. Similarly, there has been no showing that the factors contained in G. L. c. 6, § 178K, or the regulations interpreting the factors, are arbitrary or capricious. In 2006, we considered the reported question, "[W]hether the [b]oard's final classification procedure vests untrammeled discretion in the [b]oard over the classification level, thereby rendering the procedure one that is arbitrary and contrary to law," and answered the question "No." *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 774, 778 (2006). In our decision, we reviewed the statutory factors set forth in § 178K, and the regulations promulgated by the board,

---

[8]This being said, however, we urge the board, as soon as feasible, to satisfy the statutory membership requirement of having two mental health professionals with the expertise specified by the Legislature. Not having the required membership renders the board subject to criticism and places it in violation of a legislative directive.

[9]Subsequent revisions to the regulations, adopted in 2004, did not affect 803 Code Mass. Regs. § 1.40.

and concluded that they provide for a specific and detailed classification process that sufficiently protects an offender's procedural due process rights.

We spoke, in *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, 447 Mass. 779 (2006), of the importance that the board be comprised of "experts who are knowledgeable and experienced in assessing and evaluating sex offenders in order to develop and promulgate regulations and guidelines for determining the appropriate level of risk and dangerousness an offender poses." *Id.* at 786. We did not infer, however, that the presence of two licensed psychologists or psychiatrists is required in order that the board have authority to act, or in order to validate a classification decision. As has been stated, § 178K (1) expressly belies this inference.

In his written decision, the hearing examiner made detailed findings with respect to the nature of the plaintiff's offenses and carefully explained his application of the statutory factors set forth in G. L. c. 6, § 178K (1) (*a*)-(*l*), and the specific guidelines contained in 803 Code Mass. Regs. § 1.40 (2004), to his findings. The hearing examiner found that the plaintiff had engaged in a continuing course of sexual misconduct, involving separate incidents, with the same victim (not a member of the plaintiff's family), who, because of his young age, was extravulnerable and, thus, was unable to defend himself or effectively report the abuse.[10]

On the positive side, the hearing examiner recognized the

---

[10]In determining the plaintiff's likelihood of recidivism and degree of dangerousness, the hearing examiner also considered the fact that the plaintiff's victim was a male. Title 803 Code Mass. Regs. § 1.40(9)(c)(2) advises that among the elements to consider in assessing the nature of a particular sex offense is whether the offense was committed by a male offender on a male victim. The plaintiff claims that the hearing examiner's application of this regulation to his case penalized him for being homosexual in violation of his equal protection rights. This claim has no merit.

The equal protection analysis under both the State and Federal Constitutions is the rational basis test. The challenged regulation was drawn from findings of sex offender experts (as cited in the regulation) in order to assist the board in determining more accurately a sex offender's risk to reoffend and level of dangerousness. Prefatory language to the regulation explains: "Much can be learned about an offender by studying the nature of the offenses he has committed . . . . Based on its review of the research, the [b]oard found the presence of deviant sexual interests dramatically increases the risk of reof-

plaintiff had partially completed a four-phase sex offender treat-ment program employed by the Department of Correction dur-ing the time of his incarceration, and that, since March, 2005, the plaintiff had regularly attended group sex offender therapy with a licensed mental health professional, Dr. Susan M. Quig-ley. He noted that Dr. Quigley, in a letter sent to the plaintiff's counsel on July 6, 2005, described the plaintiff's progress as "slow but noticeably improved" and acknowledged that "[o]ver time, these positive changes might well support lessened concerns regarding [the plaintiff's] risk to reoffend." He also noted, however, Dr. Quigley's prediction that the plaintiff would have "many months of treatment ahead of him." The hearing examiner concluded that the plaintiff "has demonstrated through his his-tory to be highly likely to reoffend and to be a person who poses a substantial danger to young and vulnerable victims, who without benefit of community informational access and active dissemina-tion would be otherwise unable to protect themselves." There is substantial support in the record for this conclusion.

2. Contained on one page of the plaintiff's probation record was a handwritten notation indicating that the plaintiff had exhibited "deviant sexual arousal patterns" during a penile plethysmography (see note 3, *supra*).[11] The test, apparently, had been administered to the plaintiff by Dr. Quigley, who informed the plaintiff's probation officer of the result by means of a facsimile transmission on January 28, 2005. Over the plaintiff's objection, the hearing officer concluded that the information

fending and that the strongest deviant sexual interests have empirically been found to be more prevalent among those offenders who victimize strangers, prepubescent children, non-consenting males, [or] vulnerable persons . . . . The [b]oard otherwise, or unless indicated in this [subsection], does not consider sexual gender orientation of either the offender or the victim in determining the risk to reoffend [or] degree of dangerousness posed." We have no difficulty concluding that the regulation serves a legitimate State interest and does not seek to punish, or impose an adverse classification on, the sexual behavior of consenting male adults. It follows that cases relied on by the plaintiff, see *Lawrence* v. *Texas*, 539 U.S. 558, 563 (2003), and *State* v. *Limon*, 280 Kan. 275, 284 (2005), do not support his equal protection claim.

[11]The plaintiff correctly points out that the record contains no information about the protocol under which the test was administered. During the hearing, he testified that he was shown photographs on a videotape of different people and that he displayed "a little bit of arousal towards kids," but more "for people over eighteen."

was admissible, because it was part of the plaintiff's probation chronology, which was accepted and recorded in the normal course of the department's monitoring of the plaintiff. In stressing the importance of further sex offender treatment for the plaintiff, the hearing examiner wrote: "In fact, during a January 2005 contact with his probation officer Dr. Quigley reported that a penile plethysmograph administered to [the plaintiff] determined he exhibited 'deviant' arousal to the test's stimuli."

a. We reject the plaintiff's contention that the board should have allowed his request for fees to hire an expert to contest the validity of the test results. In *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd., ante* 764 (2008), we held that, under G. L. c. 6, 178L (1), the board has discretion to grant an indigent sex offender fees to retain an expert witness even where the board itself does not intend to rely on an expert witness, but the hearing examiner acted within his discretion in denying the plaintiff's request. See *id.* at 770-776. See also *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, 447 Mass. 779, 784-785 (2006). The notation in the probation report was not prepared specifically for the classification hearing; the test result was not submitted as a report of an expert witness (see 803 Code Mass. Regs. § 1.03 [2004]); and Dr. Quigley's conclusion regarding the outcome of the test was not submitted as the opinion of an expert witness. More importantly, for our purposes, the transcript of the hearing and the hearing examiner's written decision demonstrate that he (accurately) accepted and understood the word "deviant," not as a technical diagnosis, but as a reference to inappropriate or illegal sexual misconduct indicative of a sex offender's risk of recidivism, as used (but not defined) in 803 Code Mass. Regs. § 1.40.[12] An expert clearly was not needed to shed light on the report and would not have assisted the hearing examiner in analyzing the factors enumerated in G. L. c. 6, § 178K, in order to determine the appropriate classification level for the plaintiff.

b. For essentially the same reasons, we find nothing improper in the hearing examiner's consideration of the plethysmograph

---

[12]We reject the plaintiff's argument that the judge violated G. L. c. 30A, § 11 (5), by "taking administrative notice of what the non-testifying plethysmographer must have meant by recording [the plaintiff's] 'deviant arousal' . . . and in equating that with fulfillment of regulatory standards."

test result. He was, obviously, mindful of the test result, but there is no indication in his carefully worded twenty-four page written decision that he placed any significant reliance on the information or that he misunderstood the test's general purpose. The rules of evidence observed by courts do not apply to hearings before the board. See G. L. c. 6, § 178L (2); 803 Code Mass. Regs. § 1.19(1) (2004). We decline to consider whether penile plethysmograph testing is reliable and, therefore, would generally be admissible under the standards articulated in *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), or our own decisional law interpreting the *Daubert* opinion. See *Commonwealth* v. *Lanigan*, 419 Mass. 15 (1994).

3. The plaintiff claims that the judge erred in denying his motion to introduce into the administrative record two letters from therapists (one dated April 7, 2006, the other dated April 11, 2007), which, the plaintiff asserts, would have provided documentation of his progress in sex offender treatment that was unavailable when the hearing examiner issued his decision (February 13, 2006). There was no error. "A motion for leave to present supplemental evidence pursuant to G. L. c. 30A, § 14(6), is addressed to the sound discretion of the judge." *Massachusetts Ass'n of Minority Law Enforcement Officers* v. *Abban*, 434 Mass. 256, 265-266 (2001). The judge's disposition of the motion was based on her recognition that the hearing examiner had credited the plaintiff's progress and her determination that the plaintiff had not made a "substantial showing" that further evidence of the plaintiff's progress would have added anything to the hearing examiner's conclusion. *Northeast Metro. Regional Vocational Sch. Dist. Sch. Comm.* v. *Massachusetts Comm'n Against Discrimination*, 35 Mass. App. Ct. 813, 818-819 (1994). We agree.

Pursuant to 803 Code Mass. Regs. § 1.37C, the plaintiff may request a redetermination of his classification three years from the date of his final classification, at which time he may submit, along with any other relevant information, evidence of his offense-free behavior in the community in the years following his incarceration, as well as his further progress in sex offender treatment and mental health counselling.

*Judgment affirmed.*