NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-564

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 242548

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  On appeal, Doe argues that (1) the hearing examiner improperly prevented him from making a statement by failing to accommodate his request pursuant to G. L. c. 233, § 16, to be sworn in consistent with his religious beliefs, (2) his right to counsel was violated when the hearing examiner failed to conduct an inquiry into Doe's request for an attorney, (3) the hearing examiner improperly weighed Doe's failure to complete sex offender treatment, and (4) the hearing examiner improperly failed to consider two 2019 Static-99R tests that indicated a lower risk profile for Doe.  Concluding that the hearing examiner failed to consider potentially significant evidence

bearing on Doe's classification, we vacate the judgment and remand for further proceedings before SORB.

Background.  In 2009, Doe was found guilty of one count of rape in violation of G. L. c. 265, § 22.  The charge stemmed from an incident in 2007 when Doe anally raped a twenty-eight year old man with whom he was in a romantic relationship.  On the day of the incident, Doe became angry with the victim after the victim told Doe he did not want to move in with him.  Doe punched the victim in the face and destroyed some of the victim's personal property.  Doe then threatened him with a knife and demanded that the victim drive both of them to Doe's house.  When they arrived, Doe threatened to kill the victim and poked at his stomach with a knife.  Doe then ordered the victim to undress and anally raped him until he ejaculated inside of the victim.

The victim ultimately was able to escape the following morning, after Doe ordered the victim to drive him to the hospital for a prearranged surgery.  Although Doe took the victim's car keys after they arrived at the hospital, the victim was able to retrieve the keys from Doe's belongings while Doe was in surgery and drive to safety.

Doe was sentenced to eight to twelve years of incarceration.  While Doe was incarcerated, SORB notified him pursuant to G. L. c. 6, §§ 178E, 178K (2) (c), and 178L (1) (a),

2

that he had a duty to register as a level three sex offender. Doe challenged his duty to register and the classification and requested an evidentiary hearing. A hearing was held pursuant to G. L. c. 6, § 178L, on February 7, 2018. Following the hearing, the hearing examiner issued a decision in which she determined that Doe was required to register as a level three sex offender. Doe was released from prison on April 22, 2019.

Doe sought judicial review of the hearing examiner's decision in the Essex Superior Court pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14, and filed a motion for judgment on the pleadings. On March 3, 2020, the Superior Court judge found that the hearing examiner had not considered two reports prepared by qualified examiners in 2019 for the purpose of determining whether Doe qualified as a sexually dangerous person (SDP). The judge stayed the motion for judgment on the pleadings and remanded the case to the hearing examiner for further consideration. On April 6, 2020, the hearing examiner issued an amended decision again ordering that Doe register as a level three offender. On April 8, 2021, a hearing was held on the motion for judgment on the pleadings; the judge issued a decision affirming Doe's classification on June 25, 2021. Doe then appealed to this court.

Discussion. 1. Statements under oath or affirmation. Doe first argues that the hearing examiner erred by requiring that

Doe be sworn in prior to being permitted to speak.  Before a witness can provide testimonial evidence, the witness must swear or affirm that the witness will testify truthfully.  Commonwealth v. Stewart, 454 Mass. 527, 531 (2009).  The purpose of such an oath or affirmation is "to remind witnesses and observers alike that testimony is a solemn process with serious consequences."  Commonwealth v. Murphy, 57 Mass. App. Ct. 586, 592 n.5 (2003).  However, not every word spoken at a hearing constitutes testimony, and an oath or affirmation is not required before a defendant or witness is permitted to make a nontestimonial comment.  Commonwealth v. Stewart, 255 Mass. 9, 18 (1926) (describing nontestimonial comment as one "not given under oath").

Doe's hearing was conducted via videoconference and he was represented by an attorney.  The attorney's representation of Doe dated back at least to July 21, 2017, when SORB first shared with the attorney the documents it planned to introduce in evidence at Doe's hearing.  An interpreter was present to help ensure that Doe understood the proceedings and could communicate with the hearing examiner.  During the hearing, the interpreter, speaking on Doe's behalf, stated, "he wants to request a hearing . . . and he wants to find an attorney."  Speaking for himself in English, Doe then added, "I have to fix an issue because if I proceed, it's going to -- this really could cause me a problem."

4

The hearing examiner then stated, "I mean he has an attorney so help me understand what he's actually saying." Doe's attorney responded, "we can't really narrow it down exactly what he's going to say, but I think we need to let him say it."

In response to the confusion regarding what Doe wished to communicate, the hearing examiner suggested that Doe's comments may constitute substantive testimony, which would require that Doe first be sworn in. The record, however, does not support this supposition, because the hearing had not yet turned to the merits of the case. Neither Doe nor his attorney had indicated that Doe wished at that time to testify in his own defense. Instead, the record at least suggests that Doe was experiencing an issue with his attorney and that he wanted to explain the issue to the hearing examiner.

When the hearing examiner explained that she would administer an oath to allow Doe to speak, Doe declined and explained that taking an oath conflicted with his religious beliefs. The hearing examiner then suggested a modified version of the oath. She asked Doe, "will you cooperate with holding your hand up and I can say do you affirm that you're going to tell the truth and nothing but the truth?" In response, Doe stated, "When I say the truth, I'll say the truth," and a moment later added, "[w]henever my hand is a symbol . . . it's against my rules." The hearing examiner's use of the word "affirm"

5

instead of "swear" did not assuage Doe's religious objections to taking an oath or raising his hand. The hearing examiner also did not consider Doe's statement "When I say the truth, I'll say the truth" to be an adequate affirmation.

The hearing examiner then explained to Doe that, if he wished to make a statement, "there is a certain procedure we have to follow by the law. . . . I have to be able in some fashion to have you sworn in." SORB's attorney contributed to the confusion by asserting that SORB "would object to any type of statement without him being sworn in some form or fashion." The hearing examiner invited Doe to put any statement he wished to make into writing and submit it. However, the examiner also informed Doe he would not be permitted to speak unless he were sworn in. At that point, Doe signed off from the videoconference. The hearing then proceeded without him "at the agreement of both counsels."

The comments Doe wished to make did not seem to amount to testimony. Doe never mentioned the substance of his case or any facts he wished to emphasize or dispute. Accordingly, it appears as if there was no need for him to be sworn in. He could have been permitted to make his statement and, if it turned out to be testimonial, the hearing examiner could have declined to consider it unless Doe first affirmed that he would tell the truth and then repeated his statement. The hearing

6

examiner should have attempted to listen to Doe's concerns before concluding that he needed to raise his hand and be sworn in. Once that occurred, if Doe wanted to discharge his attorney and attempt to have a new one appointed, or represent himself, the hearing officer could have then conducted an appropriate colloquy after an affirmation. SORB's request that Doe not be permitted to speak without being sworn in was likewise unhelpful.

Although we agree with Doe that he should have been able to make nontestimonial comments to potentially express his apparent desire to have new counsel without being sworn in, see Commonwealth v. Moran, 388 Mass. 655, 659 (1983) ("a judge must permit a defendant to advance his reasons for wanting to discharge his attorney"), we also conclude that Doe's decision to abruptly sign off from the hearing alongside his failure to raise this argument before either the hearing examiner or the Superior Court preclude him from making this argument for the first time on appeal. Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 814 (2006). In SORB cases, the hearing examiner serves as the agency factfinder and is therefore appropriately positioned to develop the factual record to the degree necessary to support appellate review of legal issues that arise at the hearing. Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 58 (2010).

Without an adequately-developed record, the appellate court lacks the factual clarity required to fairly adjudicate alleged legal errors.

Here, because none of these issues were raised before the hearing examiner, the record before us on these issues has been inadequately developed. We cannot, for example, divine from the transcript of the SORB hearing what issue Doe wanted to bring to the attention of the hearing examiner or why Doe abruptly signed off from the hearing. Because such factual gaps impede proper analysis of the related legal issues, we must deem the issues waived.

Doe's subsequent counsel before the Superior Court also had another opportunity to raise the issue. See Doe, Sex Offender Registry Bd. No. 15606 v. Sex Offender Registry Bd., 452 Mass. 784, 788 (2008) (Doe No. 15606) (Superior Court judge considered argument not raised before hearing examiner). See also M. H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm'n, 386 Mass. 64, 68 (1982) (plaintiffs had right to argue issue on appeal not raised at administrative hearing but raised before Superior Court). Had he done so, and in particular had he identified what statement Doe was trying to make and how it was material, the judge would have had an opportunity to remand the case to the hearing examiner to further develop the factual record necessary to support Doe's claims of legal error. But

8

Doe's then-counsel did not do so, and this precludes Doe from making these arguments for the first time on appeal or from making the showing of prejudice necessary to obtain relief.

2. Right to counsel at SORB hearing. Doe argues that the hearing examiner's failure to inquire into Doe's potential conflict with his attorney violated his right to counsel. "[T]he sex offender registration law provides sex offenders with the right to counsel at the initial classification hearing." Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 209 (2018). See G. L. c. 6, § 178L (1) (a). As explained above, Doe had an attorney to represent him at his February 7, 2018, initial classification hearing who had served in this role since the previous July. The record does not indicate whether Doe spoke with his attorney before the hearing or if Doe even knew he had an attorney. During the hearing, Doe stated, through his interpreter, that he "wants to find an attorney." Doe was unable to expand on this remark because the hearing examiner improperly prevented Doe from speaking without being sworn in. His attorney also stated that he was "objecting to [Doe] saying anything, but he has a right if he wants to over my objection to go ahead and do what he wants to do." Doe shortly thereafter signed off from the hearing and his attorney proceeded with remainder of the hearing in Doe's absence.

9

Like with Doe's argument about the hearing examiner not allowing Doe to speak, Doe's subsequent counsel before the Superior Court had an opportunity to raise any alleged violation of Doe's right to counsel in the Superior Court, as well as to show any resulting prejudice.  Doe No. 15606, 452 Mass. at 788. This would have allowed the judge to further develop the factual record to establish whether a conflict existed.  But the argument was not raised below and because it cannot be raised for the first time here, we deem the issue waived.  In any event, Doe has not identified any particular prejudice related to his dissatisfaction with, or uncertainty about the role of, the attorney who appeared with him at the hearing.

3.  Weight afforded Doe's sex offender treatment.  Doe also argues that because the hearing examiner failed to consider Doe's reason for declining to fully participate in sex offender treatment, she erred by giving his limited participation in the program only minimal mitigating weight.  In support, Doe cites Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 141 (2019) (Doe No. 23656), which discussed the dilemma sex offenders face regarding nonconfidential sex offender treatment.  In such programs, a participant may face the risk of incriminating themselves because any uncharged sexual offense the participant admits to during treatment can later be used to support a prosecution of

10

the participant.  Because of this dilemma, the court in Doe No. 23656, supra at 140-141, held that if "sex offender treatment is conditioned on a waiver of confidentiality, refusal of treatment alone is insufficient to support an inference that the [offender] does not want to be treated" (citation omitted).  This limits SORB's authority to apply its classification factor 24, under which the refusal of treatment is an aggravating factor indicating an "increased risk of reoffense and degree of dangerousness."  803 Code Mass. Regs. § 1.33(24) (2016).  See Doe No. 23656, supra at 140.

Here, in contrast, the hearing examiner considered the mitigating effect of Doe's limited sex offender treatment participation.  And while the program's nonconfidential structure may have contributed to Doe's failure to complete the program, the hearing examiner credited Doe's "suspen[sion] from treatment several times due to receiving disciplinary reports" as a primary reason.  Because the hearing examiner did not cite, or seem to use, Doe's failure to complete sex offender treatment as an aggravating factor, and instead decided he was not entitled to the full mitigating weight of a program from which he was dismissed for disciplinary reasons, we conclude the hearing examiner acted within her discretion.

4.  Consideration of 2019 qualified examiner reports and 2017 Static-99R scoring.  Doe argues that the hearing examiner

11

abused her discretion when, in applying SORB's factor 35 (psychological or psychiatric profiles indicating risk to reoffend), she failed to adequately consider the two 2019 qualified examiner reports generated as part of an effort to civilly commit Doe as an SDP pursuant to G. L. c. 123A. He also argues that the hearing examiner erred by relying on the 2017 Static-99R because the test was not scored properly. "We reverse or modify [SORB]'s decision only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011). Also, "the proper standard of review when an offender successfully challenges the application of a regulatory factor is to ask whether the error may have affected the classification and, if so, to remand to SORB." Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022).

The hearing examiner referred to both 2019 qualified examiner reports in her discussion of factor 35. While explaining their role in her broader analysis of Doe's classification level, the hearing examiner discounted their relevance by noting that the 2019 reports did not squarely address the factors SORB considers "in determining sex

12

offenders' level of recidivism."  Both 2019 reports, however, use the same Static-99R tool the hearing examiner relied on earlier in her decision.  That the qualified examiners were using the tool to assess Doe's potential status as an SDP rather than to assess Doe's proper SORB classification level does not suggest that the results have no place in the hearing examiner's analysis.  See Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 570-571 (2020) ("evaluations and information generated during the SDP process may still bear on the issues raised by the SORB classification decision").  And because the qualified examiners giving the tests in 2019 both scored Doe in the "average risk" category compared to the "high risk" score he received in the 2017 test, inclusion of their 2019 reports in considering factor 35 may have been significant enough to affect the hearing examiner's broader analysis of Doe's classification.

The 2017 test also contains at least one error that calls into question the accuracy of how factor 35 figured into Doe's risk level classification.  On the chart listing the relevant scoring categories, Doe received a total of six points, placing him in the "high risk" category.  In the following narrative, however, the report only assigns Doe a point in five categories, which would place Doe in the "above average risk" category.

Doe's appellate brief asserts with some plausibility that the 2017 test result suffered from several other scoring errors.

The hearing examiner's failure to consider the 2019 Static-99R tests and the scoring error (or errors) present in 2017 raise the possibility that the hearing examiner's application of factor 35, and thus Doe's level three classification, was erroneous.  Accordingly, we vacate the judgment of the Superior Court.  A new judgment shall enter remanding the matter to SORB with instructions to reconsider Doe's classification level in light of the results of the 2019 Static-99R tests and the claimed scoring errors on the 2017 test.

So ordered.

By the Court (Sacks, Brennan & D'Angelo, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  December 8, 2023.

---

[1] The panelists are listed in order of seniority.